WILLIAM P. HANLEY *et al. vs.* EDITH BATES BRAYTON, *Ex'x, et al.*

FEBRUARY 17, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a suit in equity begun in the superior ·court by a bill of complaint filed by William P. Hanley and Mary Hanley, his wife, against Edith Bates Brayton, execu-

trix of the will of Israel W. Brayton, her deceased husband, and Israel B. Brayton, their son.

The special relief prayed for in the amended bill of complaint is that a certain promissory note of the complainants to the testator, Israel W. Brayton, for $5000 and a recorded mortgage deed of August 1, 1927 from the complainant William P. Hanley to the testator, conveying, as security for the payment of that note, certain Rhode Island real estate, then belonging to the mortgagor, be declared null and void and be canceled; that an auction sale of the mortgaged property on November 18, 1935 by the first respondent, as executrix, to the second respondent, for one hundred dollars, under the power of sale contained in this mortgage, be declared null and void; that the first respondent be enjoined from further prosecuting an action by her, pending in the superior court against the complainants to recover a deficiency judgment on the mortgage note; and that the second respondent be enjoined from making any conveyance of the mortgaged real estate. The bill also contained a prayer for general relief.

The respondents having denied in their answer many of the allegations of the amended bill, the case was heard in the superior court on its merits, and a decree was entered in which certain findings of fact were made and the amended bill was denied and dismissed. The case is now before us on the complainants' appeal from this decree, for numerous reasons which need not be here stated in full, the principal ones being that the decree is against the law and that it is against the evidence and the weight thereof.

The facts in the case that were admitted or were proved by uncontroverted evidence are as follows. Israel W. Brayton, being then the owner of the property in question, sold and conveyed it, in June or July, 1926, to Henry G. Hannafin and Emil Bengtson, receiving in partial payment their promissory note for $5000, secured by a mortgage on the property, dated June , 1926, acknowledged June 12, 1926

and duly recorded July 12, 1926. Subsequently, Hannafin conveyed his interest in the property to Bengtson, subject to the mortgage.

Still later Bengtson sold the property to the complainant William P. Hanley and conveyed it to the latter by a deed dated July 25, 1927, and recorded August 1, 1927. Five hundred dollars in cash was paid by the grantee to the grantor for this deed, and on the day of the date of the deed the complainants signed and delivered their promissory note to Israel W. Brayton for $5000, on the face of which is printed, in large type, "Secured by mortgage on real estate," and paid him six months interest in advance.

On August 1, 1927 the complainants, at the request of the respondent, Edith Bates Brayton, acting for her husband, met him and her at the office of the town clerk of the town in which the property was situated and there signed and delivered the mortgage to Israel W. Brayton, which conveyed the property as security for the payment of their above-described note to him, and which they are asking in this suit to have declared null and void and canceled. This mortgage was then recorded, on the same day as the above-described deed from Bengtson to William P. Hanley. Israel W. Brayton then delivered to Bengtson the above-described mortgage note of Hannafin and Bengtson to him, but retained the mortgage by which the note was secured. No discharge of it had been recorded at the time of the hearing of this case in the superior court, though the respondent Edith Bates Brayton then offered to record such a discharge.

William P. Hanley paid interest to Israel W. Brayton, at the rate of $150 every six months for about four years, his last payment being made on July 23, 1931 and covering interest to January 25, 1932, but paid no part of the principal. Not long after this, Israel W. Brayton died and his wife was appointed executrix of his will. The interest being in arrears, she, as such executrix, in accordance with the power of sale in the mortgage from the complainants, caused the

property to be sold at auction on November 18, 1935, while the land records showed it to be still subject to the prior mortgage for $5000. The real estate was purchased by the other respondent, Israel B. Brayton, her son, for $100, and a mortgagee's deed was made to him accordingly and was recorded.

On January 7, 1936, she brought against the complainants the action described in the amended bill of complaint, to recover for the deficiency on the note and for some taxes on the property which she had been obliged to pay to protect the mortgage. By a decree entered by the superior court soon after the filing of the original bill of complaint in the instant case, she was enjoined, until further order of the court, from prosecuting her action at law, and the other respondent was likewise enjoined from conveying, mortgaging or otherwise alienating the property.

In the amended bill the complainants alleged, in substance, that by their agreement with Bengtson, his conveyance to them was to be subject to the existing mortgage; that Edith Bates Brayton, acting for and in behalf of her husband, requested them to sign certain papers, which they were afterwards informed were the note and mortgage signed by them; that she represented to them that the sale and conveyance of the property to William P. Hanley was invalid in the event that these papers were not signed by them; that they consulted no attorney and were not advised of the purport of these papers; and that they received no consideration for signing them and never paid any interest upon their note and were not advised of the existence of their note and mortgage until after the action at law was brought against them.

Mary Hanley was not present, when this case was heard on its merits in the superior court. William P. Hanley testified that when he signed the promissory note to Israel W. Brayton, he did not know what it was; that he did not read the mortgage signed by him and his wife and did not then

know what it was, but saw it filed for record; that nothing had been said beforehand about his giving a new mortgage; that the deed from Bengtson to him said that he (the witness) bought the property free and clear of any mortgage, though in other parts of his testimony he seemed to be trying to convey the idea that he thought he was simply buying the property, subject to the mortgage; and that when he paid interest to Mr. Brayton and afterwards to Mrs. Brayton, he was paying it on the old mortgage.

Bengtson testified, in substance, that the arrangement between the parties to the transaction was that he would convey the property to Hanley and the latter would give a new note and mortgage for $5000 to Israel W. Brayton, who was to take them in place of the former note and mortgage; that at the town hall, when his deed to Hanley was delivered, he received the old note from Israel W. Brayton and supposed that the old mortgage was discharged.

Mrs. Brayton testified, in substance, that her husband was to take the $5000 mortgage on the property for Mr. Hanley; that when Bengtson, the Hanleys and her husband and she met at the town hall the first time, which was on July 25, 1927, it was found that by some mistake the mortgage deed to her husband, to be signed by the Hanleys, had not been prepared; that therefore her husband had the Hanleys sign the $5000 mortgage note to him and he took that; that the Hanleys were in a hurry and said that when that deed was ready, Mr. Brayton would let them know; that on August 1, the mortgage deed being ready, the same parties met at the town hall, the Hanleys signed it and it was filed for record.

In rebuttal Hanley denied all Mrs. Brayton's testimony except her testimony that he and his wife signed the note at the first meeting and the mortgage deed at the second, having previously testified, as above stated, that he did not know what they were.

The justice before whom the case was heard made findings of fact which were, in substance, that no representation was made to the complainants that the transaction preceding the giving of the mortgage, that is, the passing of title from the vendor to the vendee, would be invalid, unless the mortgage was signed by the complainants, as alleged in the amended bill of complaint; that it was agreed between the three parties to the transaction that Hanley was to execute a new mortgage, which Israel W. Brayton would accept in place of the old one; that the latter did accept it and gave up the old note to Bengtson; that this constituted consideration from him to Hanley, which was sufficient consideration for the latter's note and mortgage; that when Hanley signed the note and mortgage, he knowingly assumed the entire obligation shown by them; that he paid interest on the note and that there was no agreement between them that Hanley should be liable only for the interest. We are of the opinion that these findings were supported by the great preponderance of the evidence, and that they would fully support the decree dismissing the amended bill of complaint, if it were not for two facts, to be mentioned and discussed *infra*.

We are also of the opinion that the amended bill of complaint is not based on any charge that actual fraud was perpetrated on the complainants or either of them. The nearest that they come in that bill to alleging fraud is their allegation, above stated, to the effect that Edith Bates Brayton, acting for and in behalf of her husband, requested the complainants to sign certain papers (referring to the new note and mortgage) and represented that the transaction of the sale and conveyance from Bengtson to Hanley was invalid and of no effect if the papers were not signed by Mary Hanley. But there was no allegation that the representation was made fraudulently or with knowledge of its falsity or even that it was false.

Even if every allegation in the amended bill were true, she might have honestly made such a representation, meaning

that the sale and conveyance from Bengtson to Hanley would not go through, unless a new note and mortgage was made by the Hanleys to her husband in substitution for the existing note and mortgage on which Bengtson was bound. In fact that seems to have been Bengtson's attitude, since his deed and the new mortgage were apparently filed together for record.

As the amended bill of complaint was not based on any charge of actual fraud, the justice of the superior court was not bound to dismiss such bill on the ground that no such fraud was proved and the respondents had not consented to the retention of the bill for the determination of other issues involved in the case. Therefore he was justified in making the findings of fact which he did make; and he could properly grant any of the relief prayed for by the complainants which was equitable and supported by the facts found by him and any other facts proved by the evidence or admitted.

There were two important facts which were clearly proved and not denied, but which neither the complainants nor the respondents have emphasized. These facts are that when the sale of the mortgaged property was made at auction under the power of sale contained in the mortgage from the complainants to Israel W. Brayton, the land records, in which conveyances of the property involved in this suit were recorded, showed the earlier mortgage to be undischarged and apparently in full force and effect; and that it had not been discharged because Israel W. Brayton in his lifetime had failed to perform his duty to have it discharged, and because the first respondent, who was his widow and the executrix of his will and who caused the foreclosure sale to be held and under it sold and conveyed the property to her son for $100, had failed to have it discharged, though she had it among her husband's papers.

Any cautious person who contemplated being a bidder at the foreclosure sale might well have looked at the records. If he had done so, he would have concluded that the property

was subject also to a prior mortgage for $5000 and would in all probability have lost any interest in the auction sale. On the contrary, the second respondent, who was the highest, if not the only bidder at the sale, very likely knew that the first mortgage note had been paid and that the mortgage itself was in his mother's possession as executrix of his father's will.

Therefore we are of the opinion that the foreclosure sale, which the first respondent caused to be made of the mortgaged property, was not a fair and just one and that equitable considerations require that such sale and the deed of the mortgaged property to the second respondent, which was made in accordance with such sale, should be set aside and declared null and void.

The complainants' appeal is sustained in part and denied in part and the decree appealed from is reversed. On March 7, 1938, the parties may present to us a form of decree, in accordance with this opinion, to be entered by the superior court.

*George Triedman, John M. Booth,* for complainants.

*Fergus J. McOsker,* for respondents.